UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN CHRISTOPHER JAMES,

               Petitioner,

vs.                             Case No. 3:04-cv-297-J-12MMH

WARDEN DON GLADISH, et al.,

               Respondents.

_____

**ORDER**

**I. Status**

    Petitioner Steven Christopher James filed a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on April 19, 2004.  He is challenging a 1998 Union County conviction for second degree murder with a firearm.

    Five grounds are raised in the Petition:   (1) the First District Court of Appeal violated fundamental due process rights when the court did not provide a full and fair hearing when per curiam affirming the denial of the Rule 3.850 motion; (2) the state trial and appellate courts deprived Petitioner of due process of law when several claims raised in the Rule 3.850 motion were found

to be procedurally barred; (3) the state trial court violated the Constitution by permitting perjured witness statements to be admitted at trial and a sub-claim that counsel was ineffective for failing to impeach the witnesses and to move to strike their testimony; (4) the ineffective assistance of trial counsel for failing to suppress illegally obtained evidence; and, (5) the ineffective assistance of counsel for failing to investigate jurors Gregory Phillips, Violet Sumner and Norma Pagett, for failing to produce the medical records from the bar fight and for failing to verify the number and dates of Petitioner's prior criminal convictions.

Respondents filed a Response to Petition for Writ of Habeas Corpus (Doc. #10) (hereinafter Response) on August 20, 2004. Petitioner filed a Reply to Respondents' Response to Petition for Writ of Habeas Corpus (Doc. #15) on September 24, 2004, pursuant to the mailbox rule.

## II. Procedural History

Petitioner was charged by an indictment with first degree murder. Ex. A.[1]  A jury trial was conducted. Ex. S.  The jury found Petitioner guilty of second degree murder with a firearm. Ex. B.  He was adjudicated guilty and sentenced to thirty years and four months in prison. Ex. C.  Petitioner states that a Rule

---

[1] The Court hereinafter refers to Respondents' Exhibits (Doc. #12), filed August 23, 2004, as "Ex."

3.800(a) Motion to Correct Illegal Sentence was granted and he was resentenced to twenty years on January 21, 2004.[2]  Petition at iii-iiii [sic].

Three issues were raised on direct appeal:  (1) the lower court erred in denying a mistrial when the victim's wife provided testimony indicating the defendant's bad character; (2) the lower court erred in denying Mr. James' motion for a new trial based upon the misconduct of juror Davis; and, (3) the lower court erred in not allowing testimony regarding the victim's reputation for violence from Mr. Greenway and Captain Seay.  Ex. D at i.  The state filed an answer brief.  Ex. E.  Petitioner replied.  Ex. F.  The First District Court of Appeal affirmed per curiam on November 24, 1999.  Ex. G.  The mandate issued on December 10, 1999.  Ex. H.  See James v. State, 754 So.2d 29 (Fla. 1st DCA 1999).

On November 29, 2000, Petitioner filed a Rule 3.850 motion raising the following claims:  (1) he was illegally detained and evidence was illegally obtained as a result of that detention; (2) his constitutional rights were violated through an illegal search and seizure; (3) his "[f]undamental right to preserve Defendant's right from coerced statement was violated", Ex. I at 8 (capitalization omitted); (4) "the trial court[']s instruction on

_____

[2] It is disconcerting that the Respondents have provided no documentation concerning the granting of this motion or the reduction of the sentence.  The Florida Department of Corrections' website still shows that Petitioner is serving a sentence of thirty years and four months for second degree murder.  See http://www.dc.state.fl.us/ActiveInmates/detail.

Excusable Homicide that is recited to the jurors verbatim, could have misled jury in a Second Degree Murder prosecution when a dangerous weapon is used", _id_. at 11; (5) the trial court erred in permitting perjured witness statements to be admitted by the state, which violated the Constitution; (6)(A) the ineffective assistance of counsel for failure to investigate the jurors in order to obtain a new trial, for failure to produce the medical records of the injuries to Petitioner from the bar fight and for failure to investigate the number and dates of Petitioner's prior convictions; (6)(B) the ineffective assistance of counsel for failing to seek the recusal of Judge Reiman and to move for a change of venue; (6)(C) the ineffective assistance of counsel for failing to seek the suppression of evidence; (6)(D) the ineffective assistance of counsel for failing to call alibi witnesses; and, (6)(E) the ineffective assistance of counsel for failing to call Leroy Keith as a witness. Ex. I. He also filed a memorandum of law and attachments. _Id_. The trial court, in an Order Directing State to File Written Response to Motion for Post-Conviction Relief, decided the following:

> **THIS CAUSE** comes before the Court upon the Motion for Post Conviction Relief filed by Defendant on November 29, 2000. Defendant raises a number of grounds for relief, alleging that:
>
> 1. he was illegally detained;
>
> 2. he was subject to an illegal search and seizure;

3. his right to counsel was violated;

4. improper jury instructions were given at trial;

5. trial counsel was ineffective for failing to improperly impeach a number of witnesses;

6. trial counsel was ineffective for:

> a. failing to investigate certain jurors before voir dire and failing to produce Defendant's medical records at trial;

> b. failing to move to recuse Judge Reiman and failing to move for change of venue;

> c. failing to move to suppress evidence;

> d. failing to call alibi witnesses; and

> e. failing to "introduce evidence in laying the proper predicate in specific acts of violence and character of deceased through key witness Leroy Smith".

Grounds 1, 2 and 4 should have been brought on direct appeal. *E.g.,* Wells v. State, 598 So.2d 259 (Fla. 1992); White v. Dugger, 565 So.2d 700 (Fla. 1990). Ground 6(b) is also procedurally barred, as a defendant is precluded from arguing that the judge might have been biased when the defendant knew of that possibility before the trial ended. Zeigler v. State, 452 So.2d 537 (Fla. 1984). The Court finds that a response is warranted as to Grounds 3, 5, 6(a), and 6(c)-(e).

Ex. J at 230-31.  With that, the trial court directed the state to respond to grounds 3, 5, 6(a) and 6(c)-(e).  Id. at 231.

Petitioner filed a document entitled Defendant's Response to Order Directing State to File Written Response to Motion for Postconviction Relief.  Ex. K.  Petitioner asked the trial court to rescind its ruling finding grounds 1, 2, 4 and 6(b) procedurally barred.  Id. at 238.  The state filed a Response to Motion for Post Conviction Relief.  Ex. L.  The trial court denied the motion in a detailed opinion, attaching pertinent parts of the record.  Ex. M. Petitioner appealed, Ex. N, and filed an amended brief.  Ex. O. The state did not file a brief.  The appellate court affirmed per curiam on July 10, 2003.  Ex. P.  The mandate issued on September 9, 2003.  Ex. Q.

On April 13, 2000, pursuant to the mailbox rule, Petitioner filed a Motion to Correct Sentence pursuant to Rule 3.800(a), Fla. R. Crim. Proc.  Ex. R.  Petitioner states that the motion was granted and his sentence was reduced to twenty years.  Petition at iii-iiii [sic].

### III.  Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend

v. Sain, 372 U.S. 293 (1963)).   Here, the pertinent facts of the case are fully developed in the record before the Court.   Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").   No evidentiary proceedings are required in this Court.   See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).   The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).   Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox

- 7 -

v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998),

cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review

under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted). A general framework of substantial deference governs our review of every issue that the state courts have decided:
>
> > [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant

- 8 -

> Supreme Court precedent and arrives
> at a result opposite to ours.
>
> . . .
>
> {A] state-court decision can
> involve an "unreasonable
> application" of this Court's clearly
> established precedent in two ways.
> First, a state-court decision
> involves an unreasonable application
> of this Court's precedent if the
> state court identifies the correct
> governing legal rule from this
> Court's cases but unreasonably
> applies it to the facts of the
> particular state prisoner's case.
> Second, a state court decision also
> involves an unreasonable application
> of this Court's precedent if the
> state court either unreasonably
> extends a legal principle from our
> precedent to a new context where it
> should not apply or unreasonably
> refuses to extend that principle to
> a new context where it should apply.

> Williams v. Taylor, 529 U.S. 362, 405-07, 120
> S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th

Cir. 2005).

The Eleventh Circuit addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." McIntyre v. Williams, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V.  Ineffective Assistance of Counsel

Petitioner has raised claims of ineffective assistance of counsel.  As noted previously, the standard of review to be applied is that found in AEDPA.  As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under Strickland v. Washington, supra, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, supra, at 520, 123 S.Ct. 2527 (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." Wiggins v. Smith, supra, at 520-521, 123 S.Ct. 2527 (quoting Williams v. Taylor, supra, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).
>
> Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct. 2052, with performance being measured against an "objective standard of reasonableness," id., at 688, 104 S.Ct. 2052, "under prevailing professional norms." Ibid.; Wiggins v. Smith, supra, at 521, 123 S.Ct. 2527.

Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005).

The Eleventh Circuit has expounded upon the deference due to counsel's performance as well as to the state court's decision concerning that performance:

> In assessing [Petitioner's] claim that his trial counsel were ineffective we must keep in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision. Woodford, 537 U.S. at 24, 123 S.Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). [Petitioner] must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 125 S.Ct. 1847 (2005).

## VI.  Ground One

In **ground one**, Petitioner complains that the First District Court of Appeal violated his fundamental due process rights when it failed to provide a full and fair hearing when per curiam affirming the denial of the Rule 3.850 motion.  Broadly construed, Petitioner is apparently claiming that the trial court should have conducted an evidentiary hearing, the appellate court should have remanded

the case back to the trial court for an evidentiary hearing and the appellate court should have required a more complete record for its review before affirming the decision of the trial court on the Rule 3.850 motion.   In sum, Petitioner asserts that the state court's fact-finding process was inadequate for failing to provide Petitioner with an evidentiary hearing or more supporting documents in his post-conviction proceedings.

Clearly, this is a state law claim, not arising to the level of a constitutional violation.   Although Petitioner attempts to elevate this claim by asserting due process concerns, he has merely raised an issue of state law and procedure not cognizable on federal habeas corpus review.   This limitation on federal habeas review is of equal force when a petition, which actually involves a state law issue, is couched in terms of a Fourteenth Amendment violation.

Petitioner is basically arguing that the state courts did not follow state procedure when denying the Rule 3.850 motion.   This state law procedural issue is not cognizable on federal habeas corpus review.   The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.   Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).   The Eleventh Circuit has stated that only in cases of federal constitutional error will a

federal writ of habeas corpus be available.  See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).  The Supreme Court has often held that federal habeas relief does not lie for errors of state law. Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Here, Petitioner has raised a claim of a violation of state law and procedure.  "Instead, we conclude that the claim should have been dismissed as insufficient pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction." Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam).  See Quince v. Crosby, 360 F.3d 1259, 1261 (11th Cir. 2004) (affirming that a claim is not cognizable on federal habeas review when the claim goes to issues unrelated to the cause of petitioner's detention), cert. denied, 125 S.Ct. 436 (2004).  If there was error, it was an

error of state law, not a constitutional violation.  Petitioner has merely couched his claim in terms of due process.  Thus, this claim must fail.

## VII.  Ground Two

In **ground two**, Petitioner asserts that the trial and appellate courts deprived him of due process of law when several claims raised in the Rule 3.850 motion were found to be procedurally barred.  In the Order Denying Motion for Post-Conviction Relief, Ex. M, the trial court found grounds 1 (he was illegally detained), 2 (he was subject to an illegal search and seizure), 3 (his right to counsel was violated), 4 (improper jury instructions were given at trial) and  6(b) (trial counsel was ineffective for failing to move to recuse Judge Reiman and failing to move for change of venue) were procedurally barred.  The court explained that grounds 1 through 4 should have been brought on direct appeal and ground 6(b) was barred because Petitioner was precluded from arguing that the judge might have been biased when the defendant knew of that possibility before the trial ended.[3]

These claims are procedurally defaulted.  The trial court found that the matters should have been raised on direct appeal and

---

[3] The trial court was obviously not swayed by Petitioner's attempt to raise ground 6(b) of the Rule 3.850 motion as an ineffectiveness claim to circumvent the requirement that an assertion that the judge might have been biased should have been raised before the trial ended.  Even if this claim were not procedurally barred, Petitioner cannot show prejudice to satisfy the second prong of the two part test of Strickland.  See Response at 19-22.

- 15 -

were not cognizable by motion for post conviction relief or that the matter should have been raised before the end of trial with regard to the claim of judicial bias.  The appellate court per curiam affirmed.

There are two prerequisites to a federal habeas review:  (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner."  Upshaw v. Singletary, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

"It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'" Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991), and McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992)), cert. denied, 532 U.S. 926 (2001).

> A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) . . . . [W]here the state

> court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, <u>Sykes</u> requires the federal court to respect the state court's decision. <u>Atkins v. Singletary</u>, 965 F.2d 952, 956 (11th Cir. 1992), <u>cert</u>. <u>denied</u>, 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995); <u>Meagher v. Dugger</u>, 861 F.2d 1242, 1245 (11th Cir. 1988).

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302 (11th Cir. 1999) (per curiam).

Here, the circuit court found these claims were procedurally barred. The First District Court of Appeal summarily affirmed the trial court's order, without stating the basis for its affirmance. Ex. P. This Court should assume that the appellate court upheld the procedural bar that precluded consideration of Petitioner's barred claims. <u>Kight v. Singletary</u>, 50 F.3d 1539, 1545 (11th Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 1077 (1996). Accordingly, these matters raised in the Rule 3.850 motion have been procedurally defaulted. This Court will apply the state procedural bar and will not reach the merits of the matters found to be procedurally barred by the trial court.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." <u>Parker v. Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 770 (11th Cir. 2003) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)), <u>cert</u>. <u>denied</u>, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the

bar." <u>Hill v. Jones</u>, 81 F.3d 1015, 1022-23 (11th Cir. 1996)

(citations omitted), <u>cert</u>. <u>denied</u>, 519 U.S. 1119 (1997).

> For [a petitioner] to show cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir.), <u>cert</u>. <u>denied</u>, 528

U.S. 934 (1999).

"[A] federal court may also grant a habeas petition on a

procedurally defaulted claim, without a showing of cause or

prejudice, to correct a fundamental miscarriage of justice."

<u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002) (per

curiam) (citation omitted), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003). The

fundamental miscarriage of justice exception is only available in

extraordinary cases upon a showing of "'actual' innocence" rather

than mere "'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156,

1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S.

926 (2002).

Here, Petitioner has not shown cause and prejudice or a

fundamental miscarriage of justice. Thus, this Court will apply

the state procedural bar to these matters raised in the Rule 3.850

motion (grounds 1 (he was illegally detained), 2 (he was subject to an illegal search and seizure), 3 (his right to counsel was violated), 4 (improper jury instructions were given at trial) and 6(b) (trial counsel was ineffective for failing to move to recuse Judge Reiman and failing to move for change of venue)) and will not reach the claims on their merits.

Alternatively, once again, it appears that Petitioner is really raising a state law claim, not reaching the level of a constitutional violation.  He states:

> he was foreclosed from using state corrective mechanism in the procedurally proper manner because of an unconscionable breakdown in the system in the manner of how the appellate proceeding were [sic] conducted in the Trial and State Court.  Petitioner argued that his 14th amend. rights governing procedural and substantive due process of law were violated at the threshold of the Trial Court Appellate process.

Reply at 5.  Although Petitioner couches this ground in terms of a violation of due process of law challenging the process he received in state court, he is apparently raising an issue of state law and complaining about the adequacy of the state court review of his claims.  This type of claim is not cognizable in this habeas action.  Thus, **ground two** is denied.


## VIII. Ground Three

In **ground three**, Petitioner asserts that the state trial court violated the Constitution by permitting perjured witness statements to be admitted at trial in conjunction with his claim that counsel was ineffective for failing to impeach the witnesses and to move to strike their testimony.  The trial court in denying this claim (raised in ground 5 of the Rule 3.850 motion) states:

> Defendant's claim that a number of witnesses perjured themselves during the course of the trial is actually an attack on the credibility of those witnesses' testimony. The alleged "perjury" consists simply of conflicting statements made by witnesses during trial.  The credibility of witnesses and the weight to be given their testimony lie solely within the province of the jury, Ellison v. State, 254 So.2d 837 (Fla. 1st DCA 1971), and will not be disturbed on collateral attack.  Furthermore, "in order to have a sentence set aside on the ground that perjured testimony was used, it is necessary for the motion to show that the testimony was perjured and that the prosecuting officials, at the time of its use, knew it was perjured." Austin v. State, 160 So.2d 730, 732 (Fla. 2d DCA 1964) (citations omitted).  Defendant has not made such a showing, and the Court finds Ground 5 to be without merit.

Ex. M at 381.

Petitioner's claim is addressed applying the deferential standard for federal court review of state court adjudications. First it is clear that, in this case, the state court adjudicated Petitioner's claim on the merits, and thus, there is a qualifying

state court decision.[4]  See  Wright, 278 F.3d at 1255-56.  Having found that the state court determination was a qualifying decision, the Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon review, the state court's decision did not contradict governing law.  In addition, there is no Supreme Court case favorable to Petitioner that is materially indistinguishable from the facts of this case.

The second inquiry, whether the state court's application of clearly established federal law was objectively reasonable, is also addressed.  Upon review of the record before the Court, the state court's application of the clearly established law with regard to perjurious witness statements and the effectiveness of trial counsel was objectively reasonable.  The state court reasonably applied the standard to the facts of Petitioner's case.

The decision of the state trial court in denying the above-mentioned claim raised in the Rule 3.850 Motion resulted in a decision that involved a reasonable application of clearly

---

[4] It is noted that the state, in its Response to Motion for Post Conviction Relief, Ex. L at 290-91, presented to the state trial court the standard for judging ineffective assistance of counsel claims as presented in Strickland v. Washington, 466 U.S. 668 (1984).

established federal law, as determined by the United States Supreme Court.   28 U.S.C. § 2254(d).   Accordingly, Petitioner is not entitled to relief on **ground three** because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## IX.  Ground Four

In **ground four**, Petitioner claims his trial counsel was ineffective for failing to suppress illegally obtained evidence. This claim was presented in ground 6(c) of the Rule 3.850 motion. The trial court ruled as follows:

> Defendant seems to be claiming that evidence was tampered with in some fashion, but never articulates exactly what evidence was affected or how he believes the tampering to have occurred.  As noted in the State's response, Defendant mentions positioning of the body, shell casings, receipts, and the fact that no weapon or wallet was found on the body, but explains nothing about these facts which would merit relief.  Such vague allegations are insufficient to permit the State to respond and the Court to rule upon the claim.
>
> When a motion for post-conviction relief "fails to set forth a factual basis or contains little beyond conclusory allegations, it may be summarily denied without attaching excerpts from the record." Richardson v. State, 617 So.2d 801, 802 (Fla. 2d DCA 1993). As stated by the Fifth District Court of Appeal, "[a] motion by a prisoner asserting

- 22 -

> . . . the basis for his claim . . . in general terms with no corroboration and no evidence of confirmation does not warrant or mandate an evidentiary hearing." <u>Baker v. State</u>, 404 So.2d 1151, 1151-52 (Fla. 5th DCA 1981). In this case, Defendant's motion makes nothing more than blanket accusatory statements about trial counsel's performance, and the Court finds Ground 6(c) to be without merit.

Ex. M at 382-83.

"All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 776 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 540 U.S. 1222 (2004). Deference is due regardless of whether the trial court has employed a summary disposition. As recently and thoroughly explained by the Eleventh Circuit:

> This conclusion is consistent with the numerous cases in our Court concluding that federal courts are required to defer to state court decisions even when they offer no explanation or reasoning as to how they reached their result. As we have explained: "The plain language of §2254(d)(1) requires only that the federal claim have been 'adjudicated on the merits in State court proceedings' and have 'resulted in a decision' that is neither contrary to nor involves an unreasonable application of Supreme Court precedent. That is all the text of the provision requires." <u>Wright v. Moore</u>, 278 F.3d 1245, 1254 (11th Cir. 2002). "The statutory language focuses on the result, not on the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale. Accordingly, all that is required is a rejection of the claim on the merits, not an explanation. <u>Id</u>. at 1255 (citations omitted).

- 23 -

> <u>Accord</u>, <u>Herring v. Sec'y, Dep't of Corrs.</u>, 397
> F.3d 1338, 1347 (11th Cir. 2005) ("To be
> entitled to deferential review under 28 U.S.C.
> § 2254, it is not necessary for the state
> court to explain its decision. Even a summary
> unexplicated rejection of a federal claim
> qualifies as an adjudication entitled to
> deference under § 2254(d)."); <u>Parker v. Sec'y,
> Dep't of Corrs.</u>, 331 F.3d 764, 776-76 (11th
> Cir. 2003); <u>Isaacs v. Head</u>, 300 F.3d 1232,
> 1259-60 (11th Cir. 2002).

<u>Ventura v. Attorney Gen., Fla.</u>, 419 F.3d 1269, 1286 n.7 (11th Cir. 2005).

The ruling of the state trial court in denying the above-mentioned claim resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief on **ground four** because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

To the extent the trial court found that Petitioner's claims were legally insufficient and were barred as such, this constitutes an independent and adequate state ground for denying relief. The summary denial of the claim due to Petitioner's failure to set forth a factual basis and his reliance on conclusory allegations will not be disturbed. <u>See</u> Response at 28-29.

- 24 -

Upon review of the Memorandum of Law to Motion for Post-Conviction Relief, Petitioner mentioned a shell casing, receipts and "other highly prejudicial evidence" was permitted to be introduced. Ex. I at 62. Further, he stated that no weapon was found on the victim and no money was found in his wallet or his pocket. Id. Petitioner also suggests that the victim's spouse or the victim's mother-in-law could have removed the weapon or the money. Id. at 62-63.

The Court agrees with Respondents that Petitioner has procedurally defaulted any claim that the attorney should have moved to suppress the Walmart receipt for the purchase of bullets because that claim was not fairly presented to the state courts. Additionally, he made no assertion that his statements to the police should have been suppressed in the Rule 3.850 motion or in the memorandum of law. That claim is also procedurally defaulted. See Response at 27-28. Petitioner has failed to show cause and prejudice for failing to raise those claims in state court. Further, he has not shown that a fundamental miscarriage of justice would result if the issues are not reached.

The Court agrees with Respondents that even if there were an ineffectiveness claim before the Court on counsel's failure to move to suppress evidence, Petitioner would not be able to show prejudice under Strickland. See Response at 28. Although Petitioner complains that counsel was ineffective for failing to

object to and seek the suppression of the Walmart receipt for the purchase of bullets and for failing to move to suppress the confession to the police which led to the location of the gun, these particular items of evidence were not necessary to obtain the conviction in the case at bar.  The victim's wife recognized Petitioner as the shooter.  She identified him at trial as the shooter.  Ex. S at 109-110, 118-120.  The Petitioner admitted to Dozie Sirmons that he shot the "Mother F_____".  Id. at 136.  The confession to the police was not needed to find the location of the gun because Petitioner turned the gun over to Dozie Sirmones after the shooting.  Id. at 135-36.  Mr. Sirmones left to turn the gun over to his brother Fred, a police officer.  Id. at 137.  The gun was turned over to the police by Mr. Sirmones.  Id.

Thus, even if the statements to the police had been suppressed, and even if the Walmart receipt had not been admitted into evidence, the outcome of the proceeding would not have been different.  Petitioner suffered no prejudice to his case.

With regard to the lack of a weapon or money being found on or near the victim, Petitioner asserts that had counsel effectively represented him, there would have been "concrete evidence to defuse the state[']s claim of murder under premeditation." Ex. I at 63. In essence, Petitioner suggests that the victim's wife and/or mother-in-law could have removed items from the scene.  The Court is not persuaded by this argument.  Karen Trowell, a store clerk,

testified that immediately after the shooting she ran across the street and the only people at the victim's side were the victim's wife and his mother-in-law and they were attempting to stop the flow of blood from the victim's head. Ex. S at 76-77. She further testified that the deputy arrived within two minutes of the shooting. Id. at 77. Defense counsel did cross examine the witness about the victim purchasing something in the store. The store clerk thought the victim may have bought something for his daughter, but she did not recall whether or not the victim changed a $20.00 bill. Id. at 79. Defense counsel cross-examined the victim's wife, Tangie Watkins, and she stated that the victim did have a $20.00 bill on him. Id. at 127. However, Tangie Watkins stated he did not have a wallet on his person. Id. at 131.

Defense counsel also cross examined the victim's wife concerning whether her husband had a gun on him. Ex. S at 130. She stated he did not. Id. She stated he did not have a gun at all. Id. at 132. Mrs. Watkins explained the only persons that were near her husband before the police got there were her mom and Eddie Smith. Ex. S at 130-31.

On cross examination of Captain Garry Seay, he admitted that he did not search the victim for weapons and he did not find any of his personal effects near his body. Id. at 172. Captain Seay stated that by the time he got to the scene, about ten minutes after he got the dispatch, there were at least ten to fifteen

people standing around the victim.  Id. at 171.  He then secured the area.  Id. at 172.

Counsel's performance was not deficient and no prejudice has been shown.  She effectively cross-examined the witnesses about the scene and about any possible weapon and the fact that the victim was carrying money when he went to the store.  Petitioner did not assert in the state court proceedings, and he does not now suggest, that the police tampered with any evidence.

As noted above, Petitioner claims counsel failed to defuse the state's claim of murder under premeditation.  Petitioner was not convicted of premeditated murder in the first degree.  Even if counsel's performance had been deficient, there was no prejudice. Clearly, some success was achieved by counsel's efforts to defuse the claim of premeditation because the jury did not find Petitioner guilty of premeditated first degree murder.  Instead, the jury found Petitioner guilty of second degree murder.[5]

## X.  Ground Five

---

[5] The jury was charged that the state must prove the following before finding the defendant committed second degree murder:  (1) Daryl Watkins is dead; (2) the death was caused by the criminal act of Steven Christopher James; and, (3) there was an unlawful killing of Daryl Watkins by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.  Ex. S at 454-55.  Further, the jury was instructed that "[i]n order to convict of second degree murder, it is not necessary for the state to prove that the defendant had a premeditated intent to cause death."  Id. at 455.

Respondents assert that Petitioner did not adequately raise a federal constitutional claim in the state Rule 3.850 motion. Response at 30.  Upon review, the Court finds that Petitioner adequately presented his federal claim of ineffective assistance of counsel in the state court proceedings.  Ex. I at 14-17. Petitioner states in his state memorandum of law:  "Defendant was not afforded effective assistance of trial counsel throughout all phases of proceedings.  Defense Counsel's performance fell below the standard prescribed in [the] Sixth Amendment to the Constitution." Id. at 56.  This was certainly sufficient to place the state and the trial court on notice of the federal constitutional claim of ineffective assistance of counsel.

In **ground five**, Petitioner claims his counsel was ineffective for failing to investigate jurors Gregory Phillips, Violet Sumner and Norma Pagett.  Petition at 43-44.  Petitioner states that after the trial, but before the motion for new trial, Petitioner's mother found evidence that these jurors had perjured themselves when they denied any knowledge of the victim's family.  Id. at 44. Petitioner wanted counsel to further investigate these jurors and raise the issue in a motion for new trial.

This claim, raised in a more general fashion, was presented in the state Rule 3.850 motion.[6]  Ex. I at 14-15.  The trial court held:

> Defendant states that his mother conducted her own "investigation" into the jury panel and discovered information which would preclude them from sitting as jury members at Defendant's trial.  Defendant avers that his mother faxed this information to trial counsel, whose failure to follow up on the matter prejudiced Defendant.
>
> Defendant's Exhibit A shows a list faxed from trial counsel to Defendant's mother listing the names of the jurors who were selected to be on the panel.  Defendant's Exhibit B is a fax sent from Defendant's mother to trial counsel raising concerns about particular jurors.  The only names found on both lists are Andre Davis, Gregory Phillips and Violet Sumner.
>
> Defendant addressed his concerns about juror Davis on appeal; thus, the Court need not consider that issue.  The *per curiam* affirmance by the First District Court of Appeal precludes relitigation of this claim.  <u>Gaskins v. State</u>, 502 So.2d 1344 (Fla. 2d DCA 1987).  With respect to juror Phillips, counsel questioned him during voir dire as to his knowledge of the case.  Phillips stated that Karen Trowell, a potential witness, was his sister-in-law, but confirmed that the relationship would have no bearing on his evaluation of Trowell's credibility.  As to

---

[6] Petitioner did mention in his Rule 3.850 motion and memorandum that if counsel had investigated the information, the trial court would have granted a new trial; however, it is not entirely clear that the claim in the state court proceeding was challenging counsel's conduct after the trial, rather than her conduct during the trial.  Therefore, it was reasonable for the trial court to look to the trial record to show Petitioner's satisfaction with counsel's performance immediately after the jury was selected.

juror Sumner, the record reflects that she knew nothing about the case or the witnesses who were to testify.

Finally, at the end of jury selection, counsel engaged in a colloquy with Defendant, asking his opinion of the proceedings thus far.

Defense counsel:  May I inquire of [Defendant] at this time?

Court:  You can or I can.

Defense counsel:  Okay.

Court:  Go ahead, please.

Defense counsel:  [Defendant], have you participated in this jury selection this morning with me at counsel table, in the holding cell, and have you been present for all of the sessions with the court and counsel where decisions were made on strikes, on who to keep on and who to keep off?

Defendant:  Yes, ma'am, I have.

Defense counsel:  Do you have any problem with what I've done as far as who I've excused or who I've kept on?

Defendant:  No, I don't.

Defense counsel:  Okay.  Is there anybody that you wanted me to keep on that I did not?

Defendant:  No.

Defense counsel:  Okay.  And is there anyone that you wanted off that I would not remove?

Defendant:  No.

Defense counsel:  Okay.  Do you have any questions about what's happening here?

Defendant:  No, I do not.

Defense counsel:  Did you have enough time for us to talk about this?

Defendant:  Yes, I have.

Defense counsel:  Okay.  And have I listened to what you've told me—

Defendant:  Yes, you have.

Defense counsel:  —and considered it?  Okay.

Additionally, the Court questioned Defendant, who stated that he was satisfied with his representation and with the voir dire process.

Defendant:       I     trust     my representation.

Court:  Okay.  You-Do you feel comfortable with this jury, the way we've done it today?

Defendant:  Yes, I do.

Court:  You understand how we've done it and everything like that?

Defendant:  Yes.

Court:  And you feel comfortable with the jury, the process that we've gone through?

Defendant:  Yes. Somewhat Yes.

Court:  Well, don't misunderstand me, I'd like all my brothers and sisters to be on the jury—

> Defendant:  I feel like-I feel like
> it was done fairly.
>
> Court:  Okay.  Thank you, sir.
>
> On this record, Defendant cannot be heard to
> complain that he was prejudiced by the seating
> of these jurors.

Ex. M at 378-81 (footnotes omitted).

In a footnote, the trial court noted that Petitioner's mother listed a "Norma Patterson," but there was no Norma Patterson on the jury.  Id. at 379 n.1.  The only Norma was a Norma Padgett.  Id. Finally, the court presumed that "Violet Summers" was actually Violet Sumner.  Id.

Upon review, the state court's decision did not contradict governing law.  Petitioner has not pointed to any Supreme Court cases reaching a different result under indistinguishable facts. There is no Supreme Court case favorable to Petitioner that is materially indistinguishable from the facts of this case.

The second inquiry, whether the state court's application of clearly established federal law was objectively reasonable, is also addressed.  Upon review of the record before the Court, the state court's application of the clearly established law regarding the effectiveness of trial counsel was objectively reasonable.  In sum, the state court reasonably applied the standard to the facts of Petitioner's case.

As pointed out by Respondents, Petitioner, at most, showed that Gregory Phillips was a classmate of Linda and Tina Watkins;

Violet Sumner was a classmate of Linda and Wonda [sic] Watkins, the victim's aunts; and, Norma Pagett is a family member of Mr. Pritchett, and Leon Watkins (the father of the victim) was an employee of Mr. Pritchett. Ex. I (the Affidavit of Maola T. James) at 74. This information does not show that there was some sort of relationship between the victim and the jurors, other than being past acquaintances, and clearly there was no showing of bias in the state court.

A claim of implied juror bias is insufficient. Petitioner would have to show the existence of actual bias, which he has not done. Smith v. Phillips, 455 U.S. 209, 216 (1982). The Eleventh Circuit has explained:

> The constitutional right to a trial by an impartial jury requires that those who serve on juries meet certain qualifications. At a minimum, juries must be comprised of competent and impartial persons. For example, in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 32 L.Ed.2d 83 (1972), Justice Marshall noted that defendants have a "due process right to a competent and impartial tribunal." Id. at 501, 92 S.Ct. at 2168 (plurality opinion). Recently, the Court has reaffirmed this position, stating that "due process means a jury capable and willing to decide the issue solely on the evidence before it." Smith v. Phillips, 455 U.S. at ----, 102 S.Ct. at 946. Therefore, a state criminal defendant who can demonstrate that a member of the jury which heard his case was biased or incompetent is entitled to federal habeas corpus relief.

Rogers v. McMullen, 673 F.2d 1185, 1188-89 (1982) (footnote omitted), cert. denied, 459 U.S. 1110 (1983).

Ultimately, Petitioner has failed to show that defense counsel was ineffective for not investigating the jurors after the trial based on the information she received from Petitioner's mother. This Court recognizes "'that counsel does not enjoy the benefit of unlimited time and resources,' and that '[e]very counsel is faced with a zero-sum calculation on time, resources, and defenses to pursue at trial.' Chandler, 218 F.3d at 1314 n.14." Turner v. Crosby, 339 F.3d at 1275-76. Petitioner has failed to establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had pursued this matter.

In **ground five**, Petitioner also asserts that his counsel was ineffective for failing to produce his medical records from the bar fight. Respondents argue that Petitioner did not raise a claim of failure to investigate the possibility of an involuntary intoxication defense, related to the medical records, in the state judicial system. Upon review of the Rule 3.850 motion, Petitioner did mention that he would have been able to prove he was under the influence of prescribed medication at the time of the shooting with the medical records. Ex. I at 15. He did not, however, assert that defense counsel failed to investigate an involuntary intoxication defense or that he was under the influence of a mixture of alcohol and medication which should have led counsel to investigate the possibility of an involuntary intoxication defense.

Petitioner has procedurally defaulted the claim that defense counsel failed to investigate a voluntary intoxication defense, and Petitioner has not shown cause and prejudice.  Further, he has not shown that a miscarriage of justice would result if the Court does not reach the merits of this claim.  Thus, this claim is procedurally barred and will not be addressed on the merits.

Petitioner did assert, in the state Rule 3.850 motion, that the medical records would have supported his testimony, shown that he had more than minimal injuries from the bar fight and defused the state's argument that all that was really hurt was Petitioner's pride.  Id.

The trial court held:

> Defendant also claims that counsel was ineffective for failing to produce his medical records, which ostensibly would have shown that Defendant was under the influence of prescribed medication at the time of the attack and would have rebutted the State's contention that he was minimally hurt.
>
> The State did not contest that Defendant was not hurt; in fact, the prosecutor specifically acknowledged to Defendant, "No question you were beaten badly, right?" State witnesses testified as to the injuries inflicted upon Defendant by the victim.  In addition to the testimony given by defense witnesses concerning the extent of Defendant's injuries, counsel moved into evidence nine photographs taken over a series of days showing Defendant's eyes swollen shut, broken blood vessels in one eye, lacerations on his ear, and stitches on the lip and side of the face.  Defendant himself also described his injuries to the jury. Presentation of medical records would have been cumulative evidence,

> and failure to present such cumulative
> evidence is not proof of counsel's
> ineffectiveness. <u>Valle v. State</u>, 705 So.2d
> 1331 (Fla. 1997) (citing <u>Card v. State</u>, 497
> So.2d 1169, 1176-77 (Fla. 1986)). Ground 6(a)
> is without merit.

Ex. M at 381-82 (footnote omitted).

Not only did Petitioner testify about his injuries, he also testified about the alcohol he drank and the medication he was taking for his injuries prior to the shooting. Ex. S at 280, 292, 295-96. This testimony was not challenged on cross-examination by the state.

The denial of this claim by the state court constitutes an adjudication under § 2254(d) so that it is entitled to deference. Upon review, it is clear that the state court's adjudication of the claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law. Additionally, it did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief.

Alternatively, the Court agrees with Respondents that the medical records amounted to cumulative evidence. There was an abundance of evidence that Petitioner was badly beaten in the bar fight, that he sustained numerous injuries from the fight, and that he was taking medication as a result of those injuries. The state did not challenge the fact that Petitioner was badly beaten by the

victim.  Ex. S at 325.  There was no prejudice by the failure of counsel to investigate and produce the medical records.  Petitioner cannot meet the second prong of the Strickland test.

Finally, in **ground five**, Petitioner complains that counsel failed to investigate and verify the number and dates of his prior convictions.  The trial court did not expound on the merits of this claim; however, the court denied the motion for post-conviction relief, and the motion included this claim.  Of course, under 2254(d)(1), the state court does not have to explain its reasoning process.  In fact, "a decision that does not rest on procedural grounds alone is an adjudication on the merits regardless of the form in which it is expressed."  Wright, 278 F.3d at 1255-56 (footnote omitted).  Thus, there was an adjudication on the merits of Petitioner's claim of ineffective assistance of counsel, and the trial court did not find that Petitioner's counsel's failure to verify these matters prior to trial amounted to the ineffective assistance of counsel.

The denial of this claim by the state court constitutes an adjudication under § 2254(d) so that it is entitled to deference. Upon review, it is clear that the state court's adjudication of the claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law.  Additionally, it did not result in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief.

Alternatively, assuming arguendo there was no ruling on this claim, the Court does not find there was ineffective assistance of counsel. Petitioner suggests that the state implied in closing arguments that Petitioner could not be relied upon because of his convictions and Petitioner's inability to accurately respond to the questions about his prior convictions.

Petitioner testified at trial that he had been convicted of six felony convictions back in 1986, and that his last felony conviction was in 1986. Ex. S at 333-34. On cross, the state refreshed Petitioner's memory that the last entries were 1988, not 1986. Id. at 337.

In the state rule 3.850 memorandum of law, Petitioner claimed his attorney relied on the erroneous information provided by the state, and the state said he had more convictions that he actually had. Ex. I at 58. Further, he claims that his counsel told him his last conviction was in 1986, not 1988, and the state used this to make him appear untruthful before the jury. Id.

In the federal Petition, Petitioner claims he had six felonies but only three convictions. Petition at 47. He complains that his attorney told him he had six convictions, and this information was incorrect. Id. The Court does not find this argument persuasive. There are six convictions listed on the Florida Department of

Corrections website for Petitioner:  (1) burglary (offense October 19, 1988); (2) burglary (offense October 19, 1988); (3) burglary (offense August 28, 1985); (4) burglary (offense January 30, 1986); (5) grand theft (offense October 13, 1985); and, (6) grand theft (offense May 27, 1985).[7]

Although there may have been some mis-communication, misinformation or misunderstanding about whether the last offenses were in 1988 or 1986, it appears that counsel was not in error when she advised Petitioner to admit to six prior convictions.[8]  Of course, the jury was instructed that it should consider whether the witness had been convicted of a crime when deciding the reliability of evidence.  Ex. S at 466-67.  Even assuming counsel misadvised Petitioner that his last offenses were in 1986, Petitioner readily admitted on cross that he was mistaken and the last offenses were in 1988.  Any failure on counsel's part to investigate the dates further did not prejudice the defense as the mistake on dates was promptly remedied and Petitioner's recollection was refreshed by the documents.

## XI.  Conflict

---

[7] See http://www.dc.state.fl.us/ActiveInmates/detail.

[8] Petitioner has failed to submit any judgments and sentences showing how many convictions he actually had prior to the trial for first degree murder.

In his **fifth ground**, Petitioner argues that counsel's failure to seek information about the jurors after trial caused a direct conflict of interest between attorney and client, and prejudice should be presumed. Petition at 44. He also contends that counsel's failure to produce the medical records caused a conflict of interest between counsel and client. Id. at 45.

The Court agrees with Respondents that Petitioner is attempting to circumvent the prejudice prong of Strickland by asserting that these ineffectiveness claims are actually conflict of interest claims. Response at 32. Clearly, Petitioner has not established that there was a conflict of interest.

In Quince, 360 F.3d at 1264, the Eleventh Circuit expounded upon what it takes to establish an actual conflict rather than merely presenting a hypothetical conflict:

> Under Cuyler, a petitioner in habeas proceedings who did not raise an objection at trial must show that his trial attorney labored under "an actual conflict of interest adversely affect[ing] his lawyer's performance." 446 U.S. at 350, 100 S.Ct. at 1719. Only when "a defendant shows that his counsel actively represented conflicting interests" does he establish an actual conflict under the Sixth Amendment. Id.
>
> A mere hypothetical conflict will not suffice to establish a violation under Cuyler. See Smith v. White, 815 F.2d 1401, 1404 (11th Cir.1987). In Freund v. Butterworth, we explained:
>
>> An "actual conflict" of interest occurs when a lawyer has "inconsistent interests." Smith, 815

- 41 -

> F.2d at 1405. In order to prove that an "actual conflict" hindered petitioner's lawyer's performance, petitioner "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of his or her interests. Smith, 815 F.2d at 1404; Oliver v. Wainwright, 782 F.2d 1521, 1524-25 (11th Cir.) (emphasis and internal quotation marks omitted), cert. denied, 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986).

> Freund, 165 F.3d 839, 859 (11th Cir.), cert. denied, 528 U.S. 817, 120 S.Ct. 57, 145 L.Ed.2d 50 (1999).

Petitioner has not shown that his counsel actively represented conflicting interests.  There has been no showing of inconsistent interests or an impairment of counsel's interests.  In fact, Petitioner has not shown any conflicting loyalties.  In sum, the conflict of interest claim must fail.  Prejudice will not be presumed, and the claim of ineffective assistance of counsel is denied.

## XII.  Sentence Reduction

Petitioner states that a Rule 3.800(a) Motion to Correct Illegal Sentence was granted and he was resentenced to twenty years on January 21, 2004.  The Florida Department of Corrections website does not reflect this reduction in sentence.  The Respondents do not assert that Petitioner's contention that his sentence was reduced is incorrect.

In light of the above, the Respondents will be required to forthwith take all action necessary to insure that the Florida Department of Corrections receives all corrected documentation and to insure that the sentence is corrected in the records of the Florida Department of Corrections, including the Florida Department of Corrections website, if the sentence has been reduced to twenty years.

Any claims not specifically addressed are found to be without merit.  Accordingly, it is now,

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and the Clerk of the Court shall enter judgment denying the Petition and dismissing this case **with prejudice**.

2.   Respondents are directed to forthwith take all action necessary to insure that the Florida Department of Corrections receives all corrected documentation and to insure that the sentence is corrected in the records of the Florida Department of Corrections, including the Florida Department of Corrections website, if the sentence for second degree murder has been reduced to twenty years.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in Jacksonville, Florida, this __12th__ day of October, 2005.

HOWELL W. MELTON
United States District Judge

sa 9/22
c:
Stephen Christopher James
Ass't A.G. (Dakan)